**Paul E. LYON, Plaintiff,**

v.

**CATERPILLAR, INC., Defendant.**

**No. CIV.A. 98–CV–2510.**

United States District Court, E.D. Pennsylvania.

May 22, 2000.

**208**

Dante Mattioni, Stephen J. Galati, Mattioni, Mattioni & Mattioni, Philadelphia, PA, for plaintiff.

Robert G. Abrams, Gregory J. Commins, Jr., Gregory L. Baker, Alexander B. Berger, Howrey & Simon, Washington, DC, Glenn P. Callahan, Michael N. Feder, McCarter & English, LLP, Philadelphia, PA, Douglas S. Grandstaff, Caterpillar Inc. Senior Litigation Attorney, for defendant.

### MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiff Paul E. Lyon brings this action on behalf of a proposed class against defendant Caterpillar, Inc. for violation of the Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq.*) or various other states' consumer fraud acts.[1] Jurisdiction is predicated on diversity of citizenship.[2] *See* 28 U.S.C.

---

1. Plaintiff's amended complaint also alleges claims for breach of contract and breach of the Magnuson–Moss Warranty Act (15 U.S.C. § 2301 *et seq.*). At the February 24, 2000 oral argument, however, plaintiff withdrew these claims from his motion for class certification. *See* Tr. Feb. 24, 2000 at 10–11. Additionally, plaintiff does not provide support for these claims. Arguably, there is no contract between the putative class members and plaintiff did not address the Magnuson–Moss Warranty Act in his motion for class certification.

2. Plaintiff's amended complaint provides that "[t]his Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332, as all named parties are of a diverse citizenship and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.00. Jurisdiction is also proper pursuant to section 2310(d) of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301–2312, and the Court's power of pendant and/or ancillary jurisdiction." Pl. Am. Compl. at 2. The federal claim, Magnuson–Moss Warranty Act, has now been withdrawn (as discussed above in footnote 1). The Third Circuit "repeatedly has held 'pendant jurisdiction should be declined where the federal claims are no longer viable, absent ex-

traordinary circumstances.'" *Friedrich v. U.S. Computer Services, Inc.*, 833 F.Supp. 470, 472 (E.D.Pa.1993) (quoting *Shaffer v. Board of School Directors of Albert Gallatin Area School Dist.*, 730 F.2d 910, 912 (3rd Cir.1984) (internal quotations omitted)). Although this litigation began in this court over two years ago and the parties have conducted extensive discovery, extraordinary circumstances, justifying my retention of jurisdiction, may not be present. This court, however, retains jurisdiction pursuant to diversity jurisdiction.

For the purposes of a class action, the named plaintiff and the defendant must satisfy the complete diversity rule. *See In re The Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 303 (3rd Cir.1998). In this case, plaintiff resides in the State of Washington and defendant is a Delaware corporation with its principal place of business in Peoria, Illinois. Therefore, the complete diversity requirement is satisfied.

The Supreme Court in *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), held that "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must

§ 1332. Now before me is plaintiff's motion for class certification. For the following reasons, I will deny plaintiff's motion.

## I. Background

■ For the purposes of class certification, the court is bound to take substantive allegations of the complaint as true. *See Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *see also Stewart v. Associates Consumer Discount Co.,* 183 F.R.D. 189, 193 (E.D.Pa.1998). The court is not bound by the four corners of the complaint in determining the propriety of a class action and may look beyond the pleadings. *See In re Life USA Holding, Inc.,* 190 F.R.D. 359, 364 (E.D.Pa.2000) (explaining that "[w]hile the Court should not consider the merits of the case and must assume the truth of the allegations contained in the complaint, it must nevertheless look beyond the bald allegations in the complaint in determining whether the requirements of Rule 23 have been satisfied.") (citations omitted). These facts are taken from plaintiff's amended class action complaint and plaintiff's motion for class certification.

Plaintiff owns a boat with engines manufactured by defendant and claims that the engines consume more fuel than the amount represented by defendant. On August 16, 1995, plaintiff purchased a 1995 Sea Ray 370 DB boat. The boat had twin 3116, 300 horsepower, E-rated diesel engines manufactured by defendant.[3] The engines did not meet the required specifications or perform as represented and warranted by defendant. Specifically, the engines used more fuel than warranted, required more maintenance and repairs than warranted, and failed prematurely. In addition, the boat's range was less than it would have been if the specifications and representations were accurate.

Defendant knew, before the engines were sold and installed, that the engines burned fuel in excess of the amount represented and specified. Despite this knowledge, defendant consistently published and disseminated these false specifications. Defendant there-

be dismissed from the case ...". *Id.* at 301, 94 S.Ct. 505. The Fifth Circuit, *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.1995), held that the Judicial Improvements Act of 1990, 28 U.S.C. § 1367, overruled *Zahn. See id.* at 525, 94 S.Ct. 505; *see also Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir.1996) (holding that 28 U.S.C. § 1367, supplemental jurisdiction, permits aggregation). Section 1367(a) grants district courts supplemental jurisdiction over related claims generally, and § 1367(b) provides exceptions. Class actions are not among the exceptions of § 1367(b). The Third Circuit, however, in *Meritcare, Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214 (3rd Cir. 1999), held that § 1367 did not overrule *Zahn* and therefore, in calculating the amount in controversy plaintiffs' claims cannot be aggregated to meet the jurisdictional amount. *See id.* at 218–22; *see also Leonhardt v. Western Sugar Co.,* 160 F.3d 631 (10th Cir.1998) (holding that § 1367 may be read literally, and unambiguously, to require each plaintiff in a class action diversity case to satisfy the *Zahn* definition of "matter in controversy" and to individually meet the $75,000.00 requirement. On April 3, 2000, the Supreme Court, by an equally divided Court, summarily affirmed the Fifth Circuit decision that § 1367 overrules *Zahn. See Free v. Abbott Laboratories, Inc.,* —— U.S. ——, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000). Because the Supreme Court summarily affirmed the Fifth Circuit decision with an equally divided Court, the Third

Circuit may still follow *Zahn. See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 215 n. 1, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (noting that an affirmance by an equally divided Court lacks precedential value) (citing *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 73, n. 8, 97 S.Ct. 2264, 2271, n. 8, 53 L.Ed.2d 113 (1977)). In this case, plaintiff alleges in his amended class action complaint, that "[a]ll class members have an amount in controversy in excess of $75,000.00 exclusive of interests and costs ...". Pl. Am. Compl. at 2. Therefore, regardless of whether the Third Circuit continues to follow *Zahn* or adopts the approach taken by the Fifth Circuit, plaintiff has met the jurisdictional bar in this case and this case is properly before me.

3. Defendant manufactures and sells an engine known as the 3116 model marine engine. The engine is manufactured and produced in several different ratings, including A, B, C, D, and E. Defendant defines its "E" rated engine as being for high performance use. Its typical applications are for planing hull vessels such as pleasure craft, harbor patrol, harbor master and some fishing and pilot boats. Defendant's "D" rated engine is for planing hull work vessels and bow thrusters. The "C" rated engine is for planing hull vessels such as ferries, fishing boats moving at higher speeds out and back, off-shore service boats and displacement hull yachts and short trip coastal freighters where engine load and speed are cyclical.

fore, sold engines based upon these false specifications. Defendant's acts induced plaintiff to purchase a boat with defendant's engines and caused him to attempt to repair his boat. The incorrect fuel burn rate may present economic and safety issues.[4]

There are between 3,000 and 9,000 engines that were purchased by putative class members and each engine is subject to the same incorrect fuel burn rate when installed in a planning hull vessel. Plaintiff requests that the following class be certified:

> All persons and entities who own planing hull vessels in the United States in which Caterpillar 3116 marine engines have been installed for propulsion, including all prior owners and others who have incurred expenses to purchase, operate, maintain, and/or repair such engines.

Plaintiff, for himself and all other owners of planning hull vessels that have as their source of propulsion a 3116 engine manufactured by defendant, claims violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.*, or other states' consumer fraud acts.

## II. Discussion

In deciding whether to certify a class, a court may not consider " 'whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits ...' ". *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir.1971)). Rather, this court must decide whether the plaintiff meets his burden under Federal Rule of Civil Procedure 23, which entails satisfying each of the four prerequisites set forth in Rule 23(a), and at least one of the requirements of 23(b). *See id.*

### A. Rule 23(a)

The four elements of Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). I will assume plaintiff meets the four elements of Rule 23(a) because even assuming this part of the test is met, plaintiff fails to satisfy the requirements of Rule 23(b) making class certification inappropriate.

### B. Rule 23(b)(3)

In order for a class to be certified, the named plaintiff must satisfy any one of the subsections of Rule 23(b). In this case, the plaintiff claims that he meets the requirements of Rule 23(b)(3).

To certify a class under Rule 23(b)(3) the court must find that:

> [t]he questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). The two aspects of Rule 23(b)(3) are predominance of common questions and superiority of class action.

#### 1. Predominance

For purposes of analyzing whether common questions predominate, it is necessary to evaluate whether proving the elements of the plaintiff's claim can be done through common questions or whether the proof will be overwhelmed with individual issues. Plaintiff asserts that certification of common issues is appropriate here because the issues to be certified are central to the case.[5] Defendant

---

**4.** For example, the published fuel burn rate may be used by consumers to calculate how far a vessel can travel from shore and return safely. If the fuel consumption rate is actually twice as much as indicated in the published material, boats may run out of fuel and become stranded.

**5.** Plaintiff claims the common questions are: (1) whether the specifications generated and disseminated for the Caterpillar 3116 marine engine understate the amount of fuel consumed by those engines; (2) whether Caterpillar knew that such specifications understated the amount of fuel consumed by those engines; (3) the period of

counters that common questions do not predominate. First, I will address common questions of law and second, I will evaluate common questions of fact.

### a. Common questions of law

As a threshold matter, I must determine which state's law applies to this action.

### (1) Does Illinois Law Apply?

Plaintiff asserts that Illinois law [6] applies under the Pennsylvania flexible interest analysis. Defendant asserts that the court must apply the law of every state in which putative class members reside. Defendant identified forty-one states where the last known owners of the subject engines reside.[7] I find that Illinois law would not apply to a certified class in this action.

A district court sitting in diversity must apply the choice-of-law rules of the forum. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, I look to the choice-of-law rules that a Pennsylvania court would apply.

■ Pennsylvania choice-of-law analysis requires a two-part inquiry. *See LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3rd Cir.1996). First, "[b]efore a choice of law question arises, there must be a conflict between the potentially applicable bodies of law." *See On Air Entertainment Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 148–49 (3rd Cir.2000) (citing *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3rd Cir.1994); *Williams v. Stone*, 109 F.3d 890, 893 (3rd Cir.1997)). Second, a court must evaluate which state has a greater interest in having

its law applied. *See LeJeune*, 85 F.3d at 1072.

■ The first part of the test requires the court to evaluate if a conflict exists and if this conflict is the result of a "false conflict." Even if different laws produce different results this may be the result of a "false conflict." *See LeJeune*, 85 F.3d at 1071. "A false conflict exists if only one jurisdiction's governmental interests would be impaired by application of the other jurisdiction's law." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3rd Cir.1991). If a false conflict exists, I must apply the law of the jurisdiction whose interests would be impaired. *See id.*

The inquiry in this case is whether any of the relevant consumer fraud acts conflict and if they do conflict, whether this is a "false conflict." Defendant asserts that there are numerous differences between these states' statutes. Although plaintiff contends that there is a strong commonality between the various acts, plaintiff does not appear to claim an absence of conflict or a "false conflict." *Cf.* John S. Kiernan, Michael Potenza, Peter Johnson, *Developments in Consumer Fraud Class Action Law*, 537 PLI/PAT 237, 277–84 (1998) (explaining variations of state consumer fraud acts). Neither the plaintiff nor the defendant addresses this "false conflict" issue. Additionally, an analysis of potential "false conflicts" in the class action setting would not aid in the resolution of the choice-of-law determination in this case. First, as discussed in further detail *infra*, there is not a single jurisdiction that has a greater interest in having its consumer fraud act apply to the entire class. All of the relevant jurisdictions have an interest in utilizing the state statute crafted by their

---

time between 1987 and the present when Caterpillar disseminated the alleged misrepresentations; (4) whether Caterpillar made the alleged misrepresentations to gain a commercial advantage in the marketplace; (5) the increased cost of maintenance and repair as a result of excessive fuel being consumed; (6) the decreased life of the engines as a result of excessive fuel being consumed; (7) whether the Illinois Consumer Fraud Act was violated; and (8) whether such engines had a reduced value because of their alleged consumption of excessive fuel and the extent of that reduced value. *See* Pl. Mot. at 11–12, 14.

6. Under the Illinois Act, 815 ILCS 505/1 *et seq.*, a plaintiff is required to show: (1) that defendant engaged in deceptive acts or practices; (2) that the defendant intended the plaintiff to rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *See Greisz v. Household Bank (Illinois)*, 8 F.Supp.2d 1031, 1043 (N.D.Ill.1998).

7. Additionally, defendant notes that putative class members may reside in Puerto Rico, the Virgin Islands and the District of Columbia.

state's legislature to protect their consumers and/or residents. Second, even if applying one state's consumer fraud act would not impair another state's governmental interests, it may impair the governmental interests of any of the other forty states involved. Accordingly, I will assume that the conflict between these laws is genuine and next evaluate the contacts and interests of the jurisdictions.

■ The second prong of the two-part choice-of-law test requires the court to examine which state has a greater interest in having its law applied. *See LeJeune*, 85 F.3d at 1072. A court must decide which jurisdiction is "most intimately concerned with the outcome of [the] particular litigation." *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 22, 203 A.2d 796, 806 (1964) (citations omitted). The Third Circuit explained that "[u]nder *Griffith*, 'we must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [relevant] issue.'" *Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.*, 880 F.2d 685, 689 (3rd Cir.1989) (quoting *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3rd Cir.1987)). This test combines the relationship and interest analysis. *See id.* at 688. Therefore, I must examine (1) the contacts the parties have with the relevant jurisdictions and (2) the interests of the various jurisdictions in having their particular state law applied to the putative class members' claims.

## (a) Contacts

The analysis of contacts depends upon the characterization of the issue to be litigated. Both the Supreme Court of Pennsylvania in *Griffith* and the Third Circuit in *Compagnie* quoted relevant sections of the Restatement

(Second) of Conflict of Laws (the "Restatement") in evaluating different states' contacts. In *Griffith* the court assessed a tort claim and thus, relied on § 379 of the Restatement, stating that "torts should be governed by the local law of the state which has the most significant relationship with the occurrence and the parties." *Griffith*, 416 Pa. at 15, 203 A.2d at 802. In *Compagnie*, in addressing a contract claim, the Third Circuit utilized § 188 of the Restatement, applying to contract actions. *See Compagnie*, 880 F.2d at 689. Therefore, I will attempt to apply relevant sections of the Restatement in this case.

In this lawsuit, plaintiff's claim arises under state consumer fraud statutes. In *Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543 (D.N.J.1998), the court explained that "[s]ubject to constitutional limitations, a court will generally apply the statutory law of the forum ...". *Id.* at 547 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. a (1971)).[8] In the comment to § 6, the Restatement provides that:

> The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect. If the legislature intended that the statute should be applied to the out-of-state facts involved, the court should so apply it unless constitutional considerations forbid. On the other hand, if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application.... When the statute is silent as to its range of application, the intentions of the legislature on the subject can sometimes be ascertained by a process of interpretation and construction. Provided that it is constitutional to do so,

---

8. Section 6 of the Restatement states that:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issues,

    (d) the protection of justified expectations,

    (e) the basic policies underlying the particular field of law,

    (f) certainty, predictability and uniformity of result, and

    (g) ease in determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

the court will apply a local statute in the manner intended by the legislature even when the local law of another state would be applicable under usual choice-of-law principles.

*Id.* at § 6 cmt. b.

■ Putative class members have a due process right to have their claims governed by state law applicable to their dispute. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821–23, 105 S.Ct. 2965, 2979–80, 86 L.Ed.2d 628 (1985). In the context of class action certification, the Supreme Court explained that the court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Id.* at 821, 105 S.Ct. 2965. Similarly, the Third Circuit explained that "we must apply an individualized choice of law analysis to each plaintiff's claims." *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 627 (3rd Cir.1996) (citing *Shutts,* 472 U.S. at 823, 105 S.Ct. 2965), *aff'd by Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■ While plaintiff does not directly address the applicability of the forum state's consumer fraud act, plaintiff does not contend that the Pennsylvania consumer fraud act applies to all members of this purported class action. Defendant claims that statutes of all relevant states, including Pennsylvania, apply to the putative class. Defendant, however, does not assert that the Pennsylvania statute should apply to all the putative class members.

In this lawsuit, the only contact the parties have with Pennsylvania is that some of the putative class members may reside in Pennsylvania. Applying the Pennsylvania consumer fraud act to all the putative class members' claims would be a violation of the due process rights of those plaintiffs who do not live in Pennsylvania and/or who did not purchase their boats in Pennsylvania. *See Shutts,* 472 U.S. at 821–23, 105 S.Ct. 2965. Therefore, in accordance with § 6 of the Restatement and the Supreme Court's holding in *Shutts,* I conclude that the consumer fraud act of the forum state may not be applied to all the putative class members' claims. Because the Pennsylvania consumer fraud act is not universally applicable to the putative class, I will next look to other sections of the Restatement for instruction.

Although the plaintiff raises a statutory claim, sections of the Restatement applying to common law claims are instructive. For example, in *Financial Software Systems, Inc. v. First Union National Bank,* No. Civ. A. 99–CV–623, 1999 WL 1241088 (E.D.Pa. Dec.16, 1999), Judge Yohn applied Pennsylvania choice-of-law rules and the Restatement to determine if Pennsylvania's or North Carolina's consumer fraud act applied to the plaintiff's claim. *See id.* at *6–11. Judge Yohn reasoned that in both states (Pennsylvania and North Carolina) a cause of action for deceptive trade practices is not based entirely in either tort or contract law. *See id.* at *7. Therefore, Judge Yohn applied the Restatement sections for both tort and contract actions. *See id.* While the individual consumer fraud acts may be based both in tort and contract law, I find that tort law is more appropriately applied considering the facts of this case.[9] In causes of action based

9. In contract actions the appropriate section of the Restatement is § 188, providing that:
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
  (a) the place of contracting,
  (b) the place of negotiation of the contract,

  (c) the place of performance,
  (d) the location of the subject matter of the contract, and
  (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188.

on common law fraud and misrepresentation § 148 of the Restatement lists the relevant contacts a court should consider.[10] Section 148 provides in part:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issues, has the most significant relationship to the occurrence and the parties:
>
> > (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> >
> > (b) the place where the plaintiff received the representations,
> >
> > (c) the place where the defendant made the representations,
> >
> > (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> >
> > (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> >
> > (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148. Section 148(2) of the Restatement is applicable in this case because it sets forth factors that the forum state may consider when the "plaintiff's action in reliance took place in whole or in part in a state other than that where the false misrepresentations were made."

■■■ Applying the instruction of § 148, I conclude that each putative class member's claim arises under the consumer fraud act of his or her state of residence or the state in which his or her boat was purchased. Factors (a), (b) and (e) of § 148 support the application of the consumer fraud acts of the various states. For example, factor (a) instructs the court to consider "the place, or places, where plaintiff acted in reliance upon the defendant's representations." *Id.* In this lawsuit, defendant identified forty-one possible states in which the last known owners of the subject engines reside. Therefore, each of these individual states' laws and/or the states' laws in which the putative plaintiffs purchased their boats containing these engines must be considered. Factor (b) suggests that courts consider "the place where plaintiff received the representations." *Id.* Again, putative plaintiffs may have received these representations in any state in which they purchased their boats containing engines made by defendant. Factor (e) also instructs that courts consider "the place where a tangible thing which is the subject of the transaction between the parties was situated at the time." *Id.* This factor applies "[w]hen the subject of the transaction between the parties is a tangible thing, the

---

In this lawsuit, arguably there was no contract between the putative class members and defendant. The defendant's engines were put in boats sold by third parties (not parties to this lawsuit) to putative class members. Therefore, § 188 provides little guidance. Even assuming a contract exists between the parties, applying § 188 supports the conclusion that the law of the various states applies. For example, "the place of contracting" and "the place of negotiation" are the state where each individual plaintiff purchased his or her boat. Similarly, the "place of performance" is the state to which the boat was delivered or where the boat was picked up by the plaintiff and "the location of the subject matter of the contract" is any state in which a plaintiff houses his or her boat. Therefore, applying § 188 provides support for the proposition that the consumer fraud acts of all the relevant states apply.

10. In *Financial Software Systems, Inc. v. First Union National Bank*, No. Civ. A. 99–CV–623, 1999 WL 1241088 (E.D.Pa. Dec.16, 1999), Judge Yohn applied § 145 of the Restatement instead of § 148. *See id.* at *7, n. 7. Section 145 provides the relevant contacts for all torts. Judge Yohn considered the contacts of § 145, not § 148 because (1) he found no Pennsylvania state court applying the factors delineated in § 148; (2) the factual developments in the case before him were insufficient to make determinations required by § 148; and (3) both sections are designed not to pose strict rules but rather to give effect to the policies articulated in § 6 of the Restatement. *See id.* Here, because the facts are sufficient to make determinations required by § 148 and because § 148 more closely matches the claim brought by plaintiff, I will apply § 148 instead of the more general § 145.

place where the thing is situated at the time of the transaction is a contact of some importance provided, at least, that both parties were aware that the thing was situated in this place at the time." *Id.* § 148, cmt. i. Here, when putative class members received incorrect information regarding fuel consumption the boats with the subject engines were likely located at the boat dealers. Alternatively, putative class members may have learned about defendant's misrepresentation after they purchased their boats and docked their boats in any of a number of states. In either case, this is an additional contact that extends beyond the boarders of Illinois.[11]

While factors (c) and (d) are more supportive of plaintiff's argument than factors (a), (b) and (e), factors (c) and (d) still suggest that the law of all the relevant states must be applied to putative class members' claims. Factor (c) encourages the court to consider "the place where the defendant made the representations." *Id.* Plaintiff asserts that defendant made representations about the fuel burn rate in Illinois. A counter argument, however, is that boat dealers, located in various states, made representations regarding defendant's engines' fuel consumption. Factor (d), "the domicile, residence, nationality, place of incorporation and place of business of the parties," is similarly only marginally supportive to the plaintiff's primary contention that Illinois law applies in this case. *Id.* Although the defendant's principal place of business is in Illinois, its place of incorporation is in Delaware and putative class members may reside in any of the forty-one states listed by defendant. Additionally, § 148 states, in a comment, that:

> The plaintiff's domicil or residence, if he is a natural person, or the principal place of business, if plaintiff is a corporation, are contacts of substantial significance when the loss is pecuniary in its nature ... This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship ... The domicil, residence

and place of business of the plaintiff are more important than are similar contacts on the part of the defendant.

*Id.* § 148, cmt. i. Therefore, putative class members' residence is a contact of greater significance than defendant's principal place of business.

In sum, the only contacts this case has with Illinois are that (1) defendant's principal place of business is located in Illinois; (2) misrepresentations were initially disseminated from Illinois; and (3) some putative class members may reside in Illinois. On the other hand, contacts outside of Illinois include (1) states where putative class members reside; (2) states where putative class members purchased their boats; (3) states where putative class members "received" alleged misrepresentation; (4) states where putative class members' boats are docked and used; and (5) states where putative class members had their boats repaired. Evaluating the various contacts supports a conclusion that the ICFA (Illinois Consumer Fraud Act) may not be uniformly applied to all ·putative class members' claims. Next, I will examine the relevant jurisdictions' interests in having their states' law applied.

**(b) Interest(s) of different jurisdictions**

█ In examining the interests of the various jurisdictions, I look to the goals of the various states' consumer fraud statutes. State consumer fraud acts are designed to either protect state residents or protect consumers engaged in transactions within the state. For example, the purpose of the ICFA is to "protect consumers, borrowers and businessmen against fraud and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Lyne v. Arthur Andersen & Co.,* 772 F.Supp. 1064, 1068–69 (N.D.Ill.1991). District courts in Illinois were previously split as to whether the ICFA applied to consumers who were not citizens of Illinois, however, it now appears that the ICFA may apply to non-citizens. *See Tylka v. Gerber Products, Co.,* 182 F.R.D. 573, 576–

---

11. Factor (f) does not support either parties' proposition. Factor (f) suggests the court evaluate "the place where the plaintiff is to render performance under a contract which he has been induced to enter by false representations of the defendant." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148. The parties arguably did not even have a contract. Even if a contract existed between the parties, plaintiff was not required to render performance under the contract.

78 (N.D.Ill.1998) (holding that "[t]o deny an out-of-state plaintiff standing to sue for a wrong in Illinois rejects the ICFA's liberal application directive ... Accordingly, the court directs that with respect to standing under the ICFA, any Illinois consumers, or any non-resident consumers, who purchased the allegedly misrepresented items in Illinois within the relevant time period have standing to sue and are members of the class."). Additionally, other states' acts have similar purposes, to protect consumers against fraud and unfair and deceptive practices. *See, e.g.,* Ala.Code § 8–19–2 (Alabama Deceptive Trade Practices Act providing that "[l]egislative intent. The public health, welfare and interest require a strong and effective consumer protection program to protect the interest of both the consuming public and the legitimate businessperson."); *Delgado v. J.W. Courtesy Pontiac GMC–Truck, Inc.,* 693 So.2d 602, 606 (Fla.Dist.Ct.App.1997) (explaining that Florida's Deceptive and Unfair Trade Practices Act "bestows additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts."); *Commonwealth v. Ziomek,* 145 Pa.Cmwlth. 675, 680, 352 A.2d 235, 238 (1976) (providing that "[t]he purpose of the General Assembly in passing the Unfair Trade Practices and Consumer Protection Law was to protect citizens from unfair and deceptive practices"). Plaintiff agrees that the purpose of most consumer fraud acts is to (1) protect consumers and (2) promote business within the state. *See* Tr. Feb. 24, 2000 at 19. Therefore, each state has an interest in applying its laws to protect residents from fraud and prevent businesses from defrauding customers.

The law of each putative class members' state of residence may be the appropriate law to apply. As evidenced above, state consumer protection acts are designed to protect the residents of the states in which the stat-

utes are promulgated. Judge Simandle reached this conclusion in applying the choice-of-law analysis of New Jersey.[12] *See In re Ford Motor Co. Ignition Switch Products Liab. Litig.,* 174 F.R.D. 332, 348 (D.N.J. 1997). Judge Simandle denied plaintiffs' motion for class certification involving the alleged defective ignition switch found in approximately 23 million vehicles. *See id.* at 336. One of plaintiffs' five counts was for violation of state consumer fraud statutes. In appraising plaintiffs' contention that the law of a single jurisdiction should apply the court stated that:

> Plaintiffs argue that Michigan law has the greater interest in having its law applied because Ford's headquarters are located in Michigan, the vehicles in question were manufactured there, decisions relating to the allegedly defective ignition switches were made there, and any misrepresentations, statements or advertisements regarding the Ford vehicles originated in Michigan. Further, plaintiffs claim that Michigan has an interest in regulating Ford's behavior and in making sure that it adheres to minimum levels of care expected of Michigan corporations.

> Defendants maintain that a choice of law analysis leads to the conclusion that the laws of each plaintiff's home state must be applied because those states have interests that outweigh the interests of Michigan. The court agrees.

> Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws. These interests arise by virtue of each state being the place in which plaintiffs reside, or the place in which plaintiffs bought and used their allegedly defective vehicles or the place where plaintiffs' alleged damages occurred.

---

**12.** New Jersey choice-of-law rules "require an interest analysis, in which the forum court compares the interests of the states whose laws are potentially involved in the underlying action and determines which state has the greatest interest in having its law applied." *In re Ford Motor Co. Ignition Switch Products Liab. Litig.,* 174 F.R.D.

332, 348 (D.N.J.1997). As stated *supra,* the Pennsylvania choice-of-law test combines the relationship and interest analysis. Although the New Jersey and Pennsylvania choice-of-law principles differ, both states require an examination of the interests of the states whose laws may be involved.

*Id.* at 348. Therefore, the court applied "the law of each of the states from which plaintiffs hail." *Id.; see also* Joel S. Feldman, *Class Certification Issues for Non–Federal Question Class Actions–Defense Perspective*, 612 PLI/LIT 41, 80 (1999) (noting that "[f]ederal courts unanimously reject plaintiffs' attempt to apply the law of one state in non-federal question class suits. Courts find this attempt to end-run legal variation as a simplistic approach that ignores state law choice of law principles and violates constitutional due process concerns.").

Plaintiff makes a similar argument to that made by plaintiffs in *In re Ford Motor Co. Ignition Switch Products Liability Litigation.* Plaintiff claims that Illinois law should apply because the engines were designed, manufactured and tested in Illinois; the common misrepresentations all originated from defendant's management in Illinois; and defendant's warranty claims are handled in Illinois and engine owners register their warranties in Illinois. Plaintiff focuses on the fact that this is a misrepresentation case not a product liability case. *See* Pl. Mot. at 20. Plaintiff argues that:

> [I]n a product liability case, the focus of the case is shaded more towards the location of the product itself, the manifestation of the injury and the facts surrounding the defect, which more likely, take place in each of the consumer states. In this case, since it's a misrepresentation case, the facts are centered and the interest is in Illinois, that's where the misrepresentation initially came out of, that's where the engines were manufactured, that's where the warranty claims are handled.

*See id.* at 20–21. Plaintiff further argues that Illinois law should apply because "Illi-

nois is the state that gets the greatest economic benefit of the fact that these engines are manufactured and passed down the line to be used in these boats." *Id.* at 23.

Although the state of residence of the putative class members may not be the applicable state law, plaintiff fails to convince me that because this is a misrepresentation case the interests of the individual states are somehow dissipated. For example, the misrepresentation regarding fuel consumption was likely "received" by putative class members when they purchased their boats. In other words, if an individual purchased his or her boat in Pennsylvania, he or she may have been informed about the fuel consumption by the boat retailer at the time of purchase. While the defendant may have supplied the boat retailer with the faulty fuel consumption information, the state in which the plaintiff received this misrepresentation has the paramount interest in protecting its customers.[13]

Putative class members may have purchased their boat(s) in states other than the states in which they reside. Consequently, the state law of the states in which the boats were purchased may be the applicable law. For example, in *Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543 (D.N.J.1998), Judge Irenas explained that "the New Jersey Legislature intended its Consumer Fraud statute to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction took place outside of New Jersey. Courts have declared that the Consumer Fraud Act 'should be construed liberally in favor of protecting consumers.' "[14] *Id.* at 547 (citations omitted). In *Boyes*, plaintiffs were Pennsylvania residents who signed a pur-

---

**13.** Plaintiff cites *Garner v. Healy*, 184 F.R.D. 598 (N.D.Ill.1999), a case that is arguably supportive of plaintiff's position. In *Garner*, the court certified a class of all persons who purchased products marketed, produced or distributed by defendants as "car wax." *Id.* at 599. The *Garner* court held that substantive differences in state consumer fraud law and state warranty law did not "predominate over the fundamental question of whether Defendants misrepresented their products as 'waxes' or 'protectants' to consumers." *See id.* at 602–03. For the reasons set forth in this memorandum I reach a different conclusion regarding this putative class action.

**14.** *Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543 (D.N.J.1998), involved a similar claim to plaintiff's claim in this lawsuit and one of the defendants was Caterpillar, Inc. The plaintiffs in *Boyes* alleged that "since delivery of the boat in July 1995, the boat has burned significantly more fuel than Boyes was told it would prior to the sale." *Id.* at 546. One of the plaintiffs' counts was for violation of the New Jersey Consumer Fraud Act. *See id.* Defendant notes that *Boyes* subsequently settled his claims against defendant. *See* Def. Resp. at 16.

chase order for their boat in New Jersey. The manufacture of the hull of the boat and installation of the engines were performed in North Carolina and the boat was delivered to plaintiffs in Delaware. *See id.* at 545–46. Judge Irenas concluded that New Jersey law applies to a sale between a New Jersey seller and a Pennsylvania buyer of a boat which was constructed in North Carolina and docked after delivery in Delaware. *See id.* at 546, 548.

Applying Judge Irenas' reasoning in *Boyes*, the place of the sale may be the appropriate law to apply. The putative class members purchased their boats from individual dealers and these boats happened to contain defendant's engines. Any misrepresentations regarding these Caterpillar engines may have occurred at the place of the sale, from the boat dealers to the putative class

members.[15] In any case, whether the applicable law is the place of the sale, the residency of the putative class members or the state where the boat containing the defendant's engines is docked, the applicable state law may not be limited to the statute in effect in Illinois.[16] Therefore, I must determine if the application of the consumer protection acts of the implicated states may be applied in such a way that common questions of law predominate.[17]

### (2) Application of the consumer fraud acts of the various states

Plaintiff asserts that if Illinois law does not apply, the consumer fraud acts of the various states may be divided into four categories or subclasses minimizing divergence of legal issues.[18] Defendant rejects plaintiff's argu-

---

**15.** One commentator suggests that the Illinois consumer fraud act may be applied to a class action where the defendant's principal place of business is in Illinois. *See* Daniel A. Edelman, *Applicability of Illinois Consumer Fraud Act in Favor of Out–of–State Consumers*, 8 LOY. CONSUMER L.REP 27 (1996). In reaching this conclusion, Edelman uses the following example, "XYZ Company, operating out of Chicago, runs commercials in a number of West Coast cities advertising a new and improved mousetrap for $29.95, which consumers can order by using their credit cards and dialing an 800 number. Several thousand people call to purchase mousetraps, which, in turn, are mailed [from Chicago] to the purchasers. None are sold locally. The mousetraps are defective and capable of gathering only dust, not mice." *Id.* at 27. Even if Edelman's reasoning is accepted, the hypothetical upon which he bases his conclusion is vastly different from the facts in this lawsuit. In this case, consumers did not buy the engines for their boats directly from defendant in Illinois, but rather, purchased their boats from different retailers all over the country. Additionally, while a court may have little difficulty discerning the reasons why a consumer would purchase a mousetrap, a consumer may purchase a boat for a variety of reasons, none of which involve the boat's fuel consumption. Finally, Edelman's article envisions a case brought in Illinois. Edelman cites § 6 of the Restatement "a court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." *Id.* at 30. Plaintiff has chosen to pursue his claim in Pennsylvania, yet assert that the ICFA applies to the entire putative class. Therefore, I do not find Edelman's reasoning applicable to this lawsuit.

**16.** Several Eastern District of Pennsylvania courts have held that each class member would

be subject to the consumer fraud statutes of his or her state of residence because that state would have the paramount interest in applying its laws to protect its consumers. While these courts did not delve into a choice-of-law analysis and the plaintiffs in these cases also had claims for violation of the Racketeer and Influenced and Corrupt Organizations Act ("RICO"), their decisions provide some support for my conclusion. *See, e.g., Truckway Inc. v. General Elec.*, No. 91–0122, 1992 WL 70575, at ⁴ 7 (E.D.Pa. March 30, 1992) (concluding that the resolution of the state law issues in consumer protection act claim would involve the application of the laws of the several states and denying certification); *Matjastic v. Quantum Pharmics, Ltd.*, No. 90–0647, 1991 WL 238304, at *6 (E.D.Pa. July 22, 1991) (explaining that "plaintiff alleges that defendant violated various state consumer fraud laws. The resolution of the state law issues in this count would involve the application of the laws of several states . . . ." and denying certification); *Rosenstein v. CPC Int'l Inc.*, No. 90–4970, 1991 WL 1783, at *6 (E.D.Pa. Jan.8, 1991) (reasoning that "[p]laintiffs' breach of warranty and consumer protection claims . . . provide a number of substantive state law issues. Since the plaintiffs allege a national class action under the laws of various states, the court will likely be required to apply the laws of several states . . ." and granting the plaintiff 30 days to satisfy the court that common issues of state law predominate over individual issues of state law).

**17.** Because I will deny plaintiff's motion for class certification, I need not reach the ultimate question of which state statute applies to each putative class member.

**18.** Plaintiff claims that consumer fraud acts may be grouped accordingly: (1) Statutes generally

ment that consumer protection acts may be divided into four general categories.

■ In a motion for class certification, plaintiff bears the burden of providing an "extensive analysis" of state law variations to determine whether there are "insuperable obstacles" to class certification. *See Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C.Cir.1986) (citing *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3rd Cir.1986)); *see also Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J.1998) (explaining that "certification of a nationwide class in which the law of the 50 states, rather than federal law, must be identified and applied, places the burden upon plaintiffs to credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles.") (internal quotations omitted). In *Tylka v. Gerber Products Co.*, 178 F.R.D. 493 (N.D.Ill.1998), the court rejected a plaintiff's attempts to group consumer fraud acts into four sub-classes as "overly simplistic in light of the nuances and differences presented by the consumer fraud acts." *Id.* at 498 (refusing to certify class based on various states' consumer fraud statutes, court found class certification appropriate for class members who may properly avail themselves of the ICFA and Illinois common law fraud). The *Tylka* court explained that "brief review of the applicable statutes reveals not only nuances, but differing standards of proof, procedure, substance, and remedies." *Id.* Similarly, in *Carpenter v. BMW of North America, Inc.*, No. 99–CV–214, 1999 WL 415390 (E.D.Pa. June 21, 1999), Judge Robert Kelly rejected plaintiff's attempts to group all fifty consumer protection laws into three categories. *See id.* at *3 (explaining that while "[p]laintiff concludes, based on her division into the above [3] groups, that the consumer fraud laws 'can easily be divided into subclasses and cha[r]ged to the jury.' ... Such a proffer

... is 'overly simplistic.' ") (quoting *Tylka*, 178 F.R.D. at 498).

■ State consumer protection acts vary on a range of fundamental issues. A Practicing Law Institute article surveys the various states consumer fraud acts. *See* John S. Kiernan, Michael Potenza, Peter Johnson, *Developments in Consumer Fraud Class Action Law*, 537 PLI/PAT 237, 277 (1998). The article finds that the conduct that is actionable under the various consumer fraud acts varies considerably. For example, the New Jersey consumer protection act broadly proscribes "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact ..." while the California statute specifically proscribes twenty-three itemized activities. *Id.* at 277–78 (quoting N.J.Rev.Stat. § 56:8–2 (1996), citing Cal. Civil Code § 1770 (1996)). The level of scienter also differs. *See id.* at 278 (stating that Massachusetts, Maine and Texas, do not require proof of intent to deceive, while Georgia, New Jersey and Utah require intent to deceive). States' statutes vary on whether class action is available. *See id.* (Alabama, Georgia, Mississippi and South Carolina specifically do not allow the use of class actions by private litigants). The article notes the "almost universal reluctance to certify such class actions [based on the various states' consumer fraud acts] stems not only from the exponential multiplication of individual issues ... but also from a practical recognition that distilling the laws of the fifty states [in this case forty-one states] on the causes of action brought by consumer fraud plaintiffs would be an impossibly difficult task." *Id.* at 279.

Similarly, in granting defendants' motions to dismiss multidistrict litigation, the court in *In re General Motors Corporation Anti–Lock Brake Products Liability Litigation*, 966 F.Supp. 1525 (E.D.Mo.1997), explains that each state's consumer fraud act is

prohibiting unfair and deceptive practices or which list prohibited practices, which practices include the practice in question, without the need to show intent that there be reliance; (2) Statutes with a general prohibition of unfair and deceptive practices or a list of specific practices which includes the practice in question where

the defendant intends to induce reliance but do not require a specific intent to deceive or proof of actual reliance; (3) Statutes which impose a scienter requirement (where the defendant intends that there be deception); and (4) Statutes that require proof of individual reliance by the plaintiff. *See* Pl. Am. Compl. at 10–11.

unique. *See id.* at 1536–37. For example, "the Mississippi [consumer fraud] statute does not allow class action lawsuits ... the California consumer fraud statute ... has a statute of limitations of three years ... [and][b]oth California and Texas require written notice before the filing of a lawsuit under their statutes ...". *Id.* (citations omitted). Additionally, in *Carpenter*, Judge Kelly noted that:

> With respect to the Pennsylvania [consumer fraud] Act, [defendant] BMW correctly contends that an individual inquiry will be required to determine which Pennsylvania purchasers: 1) use the automobile primarily for personal, family or household purposes; 2) read any of the complained of promotional materials; 3) interpreted those promotional materials in the manner suggested by plaintiffs; 4) relied upon that interpretation of those representations as a basis in purchasing their BMW automobile; and 5) would have purchased a different automobile or would have purchased the same car only for a lesser amount.

1999 WL 415390, at *3 n. 6 (internal quotations omitted). In sum, the consumer fraud acts of the various states are not uniform.

The article plaintiff attaches to his brief in support of his motion for class certification explains that "class proponents' state-by-state analysis [of consumer fraud acts] must be both thorough and comprehensive." Sandra Benson Brantly and Beverly C. Moore, Jr., *Commonality of Applicable State Law in Nationwide or Multistate Class Actions— Deceptive Trade Practices*, 18 CLASS ACTION REPORTS 188, 192 (1995). At the February 24, 2000 oral argument, I informed the plaintiff that "one of my concerns has been [that] ... you talk about four categories and the differences between the various consumer protection laws, but you've been very unspecific. And it's tedious and what have you, but it has to be an analysis that I have to be able to buy and you haven't made out a case on it." Tr. Feb. 24.2000 at 35–36. Plaintiff's counsel responded that "at this point, not knowing the states that are involved, I—I agree with the fact that a detailed analysis

has not been given for the Court. And we'd ask for the opportunity, once we find out which states are involved to file a supplemental brief on that issue." *Id.* at 36–37. Thereafter, I provided plaintiff with the opportunity to file a supplemental brief on the issue of whether certification of this class action would be appropriate if the various states' consumer fraud acts applied.

Plaintiff initially suggested dividing the states' consumer laws into four categories and attached an article classifying the various acts of the states. *See* Pl. Am. Compl. at 10–11, Pl. Mot. at 18. In plaintiff's supplemental memorandum, he also suggests that any variation can be handled through the use of jury instructions and/or interrogatories. *See* Pl. Supp. Mem. at 3–4. Plaintiff purposes that the Court bifurcate the trial into two phases: (1) to determine defendant's culpable conduct under the relevant states' consumer fraud acts and (2) to determine the right of the various plaintiffs to recover damages in the remaining states. *See id.* at 4. Plaintiff notes that any findings at the first phase that defendant's practices were not culpable will result in the "weeding out" of these states from the second phase. *See id.* Plaintiff also attaches sample jury instructions. *See id.* at Ex. B.

Plaintiff failed to provide a detailed analysis of the forty-one states' consumer fraud acts. Plaintiff did not furnish an analysis of the various states' consumer fraud acts in his initial motion and despite my instruction neglected to adequately supplement this filing. Plaintiff's supplemental memorandum (absent the attached exhibits) is eight and one-half pages and does not attempt to catagorize and explain the variations between the states' consumer fraud statutes.[19] Plaintiff's only attempt at providing the court with a state-by-state analysis of consumer fraud acts is in the proposed jury instructions attached to plaintiff's supplemental memorandum. Plaintiff's effort is exceedingly far from "thorough and comprehensive." As defendant points out, plaintiff's proposed jury instructions do not define a multitude of relevant terms. For example, plaintiff states

---

**19.** On the other hand, defendant provided a detailed explanation of the consumer fraud act variations. *See* Def. Resp. at consumer protection act exhibit.

"[i]n one or more states, it is prohibited for a company to engage in false, misleading, or deceptive acts or practices." Ex. B. Pl. Supp. Mem. at 3. Plaintiff never defines what each of these different statutes means by "deceptive acts or practices." Plaintiff also fails to address individual issues of causation and potential defenses to liability. For example, plaintiff does not suggest how the court may address potentially different proximate causes of putative class members' engines' overconsumption of fuel. Plaintiff "should not expect the court to ferret through, disseminate, and craft manageable schemes from these ... [jury instructions] when that burden clearly rests with ... [plaintiff]." *Tylka,* 178 F.R.D. at 498 n. 3. Furthermore, my failed attempt to make sense of plaintiff's sample jury instructions illustrates why plaintiff has not met his burden. If I find plaintiff's jury instructions confusing, how can I expect a lay jury to wade through these question? In sum, plaintiff has failed to provide a basis for concluding that common legal questions will predominate in this case.

### b. Common questions of fact

■ The mere existence of state law variations is not alone sufficient to preclude class certification. *See In re School Asbestos Litig.,* 789 F.2d 996, 1011 (3rd Cir.1986), *cert. denied* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). And, "nationwide class actions may be maintained even when state law variations are marked." *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir. 1986). When state law variations are significant, however, courts have approved class certification where "the evidence in each case [on major factual questions] was either identical or virtually so." *Id.* (citations omitted). Therefore, I must also determine if common

issues of fact overcome divergent legal issues, making class certification appropriate.

■ Although claims involving property damage generally present fewer individual issues than personal injury claims, there are still substantial factual differences in this case.[20] *See Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 627 (3rd Cir.1996), *aff'd by Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see also* Steven J. Glickstein, Maris Veidemanis, Sheila S. Boston, *Product Liability Class Actions,* 612 PLI/LIT. 315, 324 (1999). For example, there are numerous potential causes of the alleged excessive fuel consumption that may be beyond defendant's control and these causes require independent evaluation of the facts and circumstances of each person's experience. Additionally, the 3116 engine is not a single product, but rather is made in several ratings (different models). The variations of the 3116 model engines necessitate a more individualized factual inquiry, a factor weighing against certification of this putative class. Furthermore, individual comparative fault and damages issues necessitate an individualized factual inquiry. Finally, potential boat owners may have received different representations (or no representations) and purchased their particular boats (and engines) for different reasons. There is no evidence that the documents plaintiff cites, as evidence of alleged misrepresentation, were reviewed or relied upon by putative class members.

Standing alone, disparate factual issues may not have precluded certification in this case. Evaluating factual differences along with divergent legal issues, however, I find that plaintiff fails to illustrate a predominance of common issues.

20. Plaintiff cites *Tylka v. Gerber Products Co.,* 178 F.R.D. 493 (N.D.Ill.1998), in support of his contention that common factual issues predominate. In *Tylka,* the court certified a class limited to those members of the class who could avail themselves of the ICFA. While the *Tylka* court found a predominance of common issues of fact, the court only needed to examine these facts within the context of one state's consumer fraud act. In this lawsuit, however, plaintiff must illustrate that individual factual inquiries do not predominate when all the relevant consumer fraud statutes are applied. *Cf. Sanneman v. Chrysler Corp.,* 191 F.R.D. 441, 443–44, 457 (E.D.Pa.2000) (denying certification of class seeking damages against defendant based upon a claim that defendant fraudulently concealed a paint defect in many of the vehicles it manufactured; proposed class consisted solely of Illinois residents, however, the court denied certification based largely on the fact that individual issues of fact would predominate).

## 2. Superiority

The second requirement of Rule 23(b)(3) is that the class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). In making such a finding, courts have considered: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. See Fed.R.Civ.P. 23(b)(3)(A)-(D). Even if the plaintiff could have satisfied the predominance requirement, the instant class certification motion would fail on the basis of the superiority requirement.

### a. The interest of members of the class in individually controlling the prosecution or defense of separate actions

An individual's interest in controlling the litigation of his or her own claims can be outweighed where individual claims are too small to justify separate adjudication. See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting that " '[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' ") (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir.1997)). The Supreme Court explained that "[w]hile the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the 'rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' " Id. (citing Kaplan, A Prefatory Note, 10 B.C. IND. & COM.L.REV. 497, 497 (1969)). Similarly, the Fifth Circuit in Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir.1996), a class action lawsuit, explained that "[t]he expense of litigation does not necessarily turn this case into a negative value suit, in part because the prevailing party may recover attorneys' fees under many consumer protection statutes." Id. at 748 (citing Boggs v. Alto Trailer Sales, 511 F.2d 114, 118 (5th Cir. 1975) (acknowledging that the availability of attorneys' fees is a common basis for finding non-superiority)).

Plaintiff has asserted damages exceeding $100,000.00 per person. See Pl. Am. Compl. at ¶¶ 8, 31. Plaintiff contends that "[d]amages for each boat owner will exceed $100,000.00 over the useful life of the boats on [sic] which the engines were installed." Pl. Am. Compl. at ¶ 8. Individual claims would certainly be large enough to make individual suits feasible and therefore, a class action lawsuit is not the superior method of adjudicating this dispute. Individual boat owners may pursue litigation against defendant, alleging that defendant's engines, installed in their boats, use excessive amounts of fuel. Individuals who allege that defendant misrepresented the fuel consumption rate of its engines, are not without effective strength to bring their opponent into court.

### b. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class

Defendant notes that there has been litigation concerning the controversy commenced by boat owners who may have been members of this putative class. Mr. James Boyes settled his claims against defendant in an earlier suit. See Def. Resp. at 16. Mr. Boyes owned a boat with two Caterpillar engines and brought suit against defendant because of problems with the engines' fuel use. The fact that at least one putative class member resolved his claims against defendant weighs against certification.

### c. The desirability of concentrating the litigation of the claims in the particular forum

On May 19, 1999, I denied defendant's motion to transfer venue without prejudice to refile at a later stage in the litigation when the factual record is complete. While I was

willing to maintain jurisdiction for the purposes of the individual named plaintiff, finding that venue would still be appropriate if this putative class were certified requires a different inquiry. Considering the individual putative class members' interests in this litigation, I find that the concentration of litigation in this forum is undesirable.

### d. The difficulties likely to be encountered in the management of a class action

A class action is not the superior method of litigating this controversy because of potential difficulties with case management. Management problems are likely to result from the need to determine and apply the various states' consumer fraud acts. As described previously, plaintiff has not demonstrated that common issues of law and fact predominate over individual issues.[21] In addition, plaintiff fails to offer a workable plan as to how this litigation would be tried with respect to the numerous individual issues.

Therefore, I conclude that a class action is not a superior method of dealing with this lawsuit.

### III. Conclusion

For the reasons stated above, I will deny plaintiff's motion for class certification.

---

**21.** Many of the cases plaintiff cites in support of his contention that a class action is a superior method of adjudicating this controversy involve class action settlements. For example, plaintiff cites *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), where the Court endorsed a class wide settlement of claims brought by plaintiffs exposed to asbestos. *See id.* at 597, 117 S.Ct. 2231. In *Amchem Products, Inc.*, however, the Court held that "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there is no trial." *Id.* at 620, 117 S.Ct. 2231. Therefore, *Amchem* does not support plaintiff's assertion that this case may be manageable as a class action.